# IN THE COURT OF APPEALS OF IOWA

No. 15-1298
Filed October 14, 2015

IN THE INTEREST OF C.W.,
    **Minor Child,**

**S.D., Mother,**
    Appellant.

_____

Appeal from the Iowa District Court for Polk County, Colin J. Witt, District Associate Judge.

A mother appeals the termination of her parental rights to her daughter. **AFFIRMED.**

Bryan J. Tingle of Tingle Law Office, Des Moines, for appellant.

Thomas J. Miller, Attorney General, Kathryn S. Miller-Todd and Janet L. Hoffman, Assistant Attorneys General, John P. Sarcone, County Attorney, and Dominic Anania, Assistant County Attorney, for appellee.

Daniel M. Northfield, Urbandale, for father.

John P. Jellineck of the Juvenile Public Defender Office, Des Moines, attorney and guardian ad litem for minor child.

Considered by Danilson, C.J., and Vogel and Tabor, JJ.

**TABOR, Judge.**

Three-year-old C.W. has been out of her parents' care for most of her life.[1] The mother, S.D., argues the juvenile court wrongly terminated her parental rights, given her progress in dealing with substance abuse issues and her completion of classes on domestic violence awareness. She challenges the juvenile court's findings under Iowa Code sections 232.116(1), (2) and (3) (2015).

While we recognize S.D. has engaged in some services to address the dysfunctional home life that threatened the safety and well-being of her daughter at the time of removal, S.D.'s ability or willingness to respond to those services has not been sufficient to remedy the deep-seated problems. We agree with the juvenile court's assessment that an additional period of rehabilitation would not correct the situation. The record shows C.W.—a bright and kindhearted child—is confused by the current situation and craves one consistent and reliable parent. Both her guardian ad litem (GAL) and the court appointed special advocate (CASA) favor termination. Accordingly, we find termination of S.D.'s parental rights is in the child's best interests. The child's placement with a relative does not provide a reason to forego termination.

This case started in October 2013 when C.W. was fifteen months old and the Iowa Department of Human Services (DHS) received reports the mother was having drug-fueled parties in her home while C.W. and an older sibling were in their bedroom. The mother tested positive for cocaine. The father was in prison at the inception of the case. The juvenile court adjudicated C.W. as a child in

---

[1] Only the mother's parental rights are at issue in this appeal. The juvenile court ordered termination of the father's parental rights in January 2015.

need of assistance (CINA) under Iowa Code section 232.2(6)(c)(2) and (n) (2013) on November 12, 2013.

C.W.'s early home environment was troubled even beyond the mother's substance abuse. The mother suffered domestic violence at the hands of C.W.'s father. In the mother's own words, she was "in a bad relationship for nine years." The mother directed violence toward C.W.'s sibling; the DHS completed an incident report of founded physical abuse with S.D. identified as the perpetrator in July 2014.

The DHS offered services to the mother, including therapy to address her substance abuse, mental health, and domestic violence issues. While the mother made some strides over the course of this CINA case, she often missed appointments for treatment. In 2014, she was discharged from two different mental health therapy programs for not meeting the attendance policy. She was also inconsistent in attending visits with C.W. According to DHS reports, from May 2014 through May 2015, S.D. missed twenty-three of fifty-seven scheduled family interactions.

S.D.'s efforts at extricating herself from the domestic violence perpetrated by C.W.'s father have been admirable, but incomplete. The parents separated, and the father now lives in South Carolina and is not an immediate threat to the mother and C.W. But the DHS worker reported to the court that S.D. continued to communicate with the father on a regular basis through Facebook.

On November 10, 2014, the State filed a petition to terminate the parental rights of both the father and mother. The juvenile court held a hearing on

December 19, 2014. In a written order filed January 4, 2015, the court terminated the father's parental rights to C.W. In that same order, the court found the State proved by clear and convincing evidence the mother's rights should be terminated under section 232.116(1)(h). But the court decided it was not in C.W.'s best interest to terminate the child's relationship with her mother, opining:

> First, the Court is hopeful that the Mother is truthful and forthcoming that she is done once and for all with her quite awful relationship with [the father]. Second, the Court is encouraged that her involvement and participation in services and stability and life has gotten better—primarily in the last few months of the case. And third, the Court notes that there is no certainty, no good concurrent plan, and no good relative placement in place should it terminate the Mother's parental rights.

Following this ruling the court granted the mother "an extension of time and to allow for concurrent planning and stability in placement issues to be addressed for this [c]hild."

The State refiled its termination petition on May 5, 2015. The juvenile court held a hearing on June 10, 2015. The mother testified, as did the DHS case worker, a family support worker, and C.W.'s new foster mother, R.A., who is a distant cousin of the mother. At the close of the hearing, the judge ruled from the bench, telling the mother the "glimmers of hope" he saw in December 2014 had not materialized into significant change. But the judge did say he was pleased that the mother and her new paramour had identified R.A. as a custodian for C.W.

On July 14, 2015, the court issued a written order terminating the mother's parental rights under sections 232.116(1)(d), (g), and (h) (2015). The court

decided termination was now in the best interest of the child. The court concluded the mother "cannot keep [C.W.] safe physically or emotionally. The [m]other has made clear on this record that she lacks the ability and/or willingness to respond to services." The court was also impressed with the pre-adoptive placement, noting C.W. "has gained a great deal of stability in a very good suitable person and culturally fit placement that has been developed since January 2015."

S.D. appeals the termination order.

Our review is de novo, which means we look at the facts and law anew. *In re A.M.*, 843 N.W.2d 100, 110 (Iowa 2014). But even as we perform our own independent view of the law and facts, we are mindful of the juvenile court's long-term connection with this family and the judge's ability to see the parents and child firsthand in his courtroom. *See In re A.S.*, 743 N.W.2d 865, 868 (Iowa Ct. App. 2007) (deferring to juvenile court's credibility findings). We uphold an order terminating parental rights if there is clear and convincing evidence of grounds for termination. *See In re C.B.*, 611 N.W.2d 489, 492 (Iowa 2000). Evidence is "clear and convincing" when there are no "serious or substantial doubts as to the correctness [of] conclusions of law drawn from the evidence." *Id.*

The mother first challenges the statutory grounds for termination. When the juvenile court terminates parental rights on more than one statutory ground, we may affirm the order on any of the bases found by the court and supported by the record. *In re D.W.*, 791 N.W.2d 703, 707 (Iowa 2010). We find the State established the elements of paragraph (g) by clear and convincing evidence.

To prove paragraph (g) the State must show C.W. had been adjudicated CINA, the mother's parental rights had been terminated as to another child, she lacked the ability or willingness to respond to services, and an additional period of rehabilitation would not correct the situation. *See* Iowa Code § 232.116(1)(g).

The mother does not dispute the first two elements.[2] She concentrates her arguments on elements three and four. On the issue of her ability or willingness to respond to services, S.D. points to her clean drug tests throughout this case and highlights that she is no longer in an abusive relationship with C.W.'s father, who has moved out of Iowa. She also cites her completion of a domestic violence awareness class in March 2015, as well as two parenting classes offered through the Alpha Women's Center. In addition, S.D. asserts she moved into stable housing in Newton and recently started full-time employment.

While the actions listed by the mother are indeed positive steps, they do not tell the whole story. On the issue of substance abuse, the DHS reported that family members have expressed concerns that the mother continues to consume alcohol, despite her struggles with addiction. The mother also has declined to attend NA (Narcotics Anonymous) meetings, though they were recommended by the DHS as part of the case plan. On the issue of her mental health, S.D. has had lackluster attendance at therapy over the course of the case, and reengaged only as the termination hearing dates were looming. The mother told the DHS worker that she "doesn't really like therapy or need it." But the worker opined

---

[2] The juvenile court terminated S.D.'s parental rights to C.W.'s older sibling in 2009.

that the mother is "still dealing with a lot of pain from a previous termination of parental rights" and continues to struggle with "anger and relationship issues."

Related to her mental health issues is S.D.'s history of surviving domestic assault. In her testimony, S.D. insightfully stated "being a victim of domestic violence is like being a drug addict. . . . It's something that never goes away." But even with these insights and her interaction with a domestic violence advocate, S.D. continued to contact C.W.'s father and may have helped him financially, according to the DHS worker. S.D. dismissed any continued interactions as "Facebook drama." Finally, regarding parenting classes, S.D. started two different programs recommended by the DHS—"Parenting Ways" and "Incredible Years"—but missed too many sessions to complete them. While failure to complete those classes in and of itself may not support S.D.'s inability to respond to services, her lack of commitment is emblematic of her overall performance.

The DHS case worker testified that she wanted

to see the consistent engagement in therapy, again, to address the domestic violence as a victim, as an aggressor, to address the anger management issues, appropriate parenting concerns and the underlying mental health issues as I feel that the mother has been dishonest on multiple occasions throughout this case. Since then I have also requested a parenting class to address parenting as well.

Like the juvenile court, we credit the testimony of the DHS worker on this point. Despite being given the extra time, the mother has not consistently responded to the services offered through the DHS case plan.

As for the fourth element, we look to the mother's past performance as a guide to whether an addition period of rehabilitation would correct the situation

that led to the earlier termination and C.W.'s removal. *See In re T.B.*, 604 N.W.2d 660, 662 (Iowa 2000); *In re L.L.*, 459 N.W.2d 489, 493–94 (Iowa 1990). The juvenile court extended the mother additional time, yet her compliance with the case plan did not significantly improve. She did not consistently attend therapy or complete the recommended parenting classes. The mother did move into a suitable apartment and lined up a full-time position with a temporary employment agency, but only about one month before the second termination hearing. The juvenile court also noted the mother's living arrangement took her forty minutes away from the child and the mother did not have a valid driver's license. We agree with the juvenile court's conclusion that even with more time, the mother was not in a position to right the ship.

Having determined that termination was proper under paragraph (g), we turn to the mother's best-interest challenge. In determining the best interests of the child, Iowa courts must give primary consideration to the child's safety, the best placement for furthering the child's long-term nurturing and growth, and to the child's physical, mental, and emotional conditions and needs. Iowa Code § 232.116(2); *In re P.L.*, 778 N.W.2d 33, 40 (Iowa 2010) (making "it clear that there is no all-encompassing best-interest standard to override the express terms of the statutory language"). The best-interest framework includes consideration of relevant testimony of a foster parent with whom the child has been placed for pre-adoptive care. Iowa Code § 232.116(2)(c).

Key to the juvenile court's best-interest determination after the second termination hearing was the testimony of C.W.'s foster mother. R.A. testified the

child was doing "fantastic" and was well-integrated into her home. The CASA worker reported that C.W. referred to R.A. as "mama." This reference upset S.D., who pressed the child during their regular supervised visitation at a McDonald's restaurant to refer to S.D. as "the only mommy." The family support worker reported that C.W. later said she had "two mommys, a McDonald's mommy and [R.A.]"

The foster mother revealed that C.W. had tantrums after contact with S.D. and after those contacts told R.A. that "she is not her mother or relation." The confusion caused the child by S.D.'s hostility toward the foster mother supports the finding that termination is in C.W.'s best interest. The juvenile court noted S.D.'s inability to control her anger and inability to keep C.W. safe. Our review of the record also supports that conclusion. We find S.W.'s long-term interests are best served by termination of S.D.'s parental rights.

Finally, the mother argues section 232.116(3)(a) provides a reason not to terminate. This provision allows the court to avoid termination if "[a] relative has legal custody of the child." Iowa Code § 232.116(3)(a). C.W. is placed in foster care with the mother's distant cousin, R.A. But R.A. does not yet have "legal custody" of the child, so section 232.116(3)(a) does not apply. *See A.M.*, 843 N.W.2d at 113. Even if it did, the factors in section 232.116(3) are permissive and do not require a court to forego termination. In this case, the best course is to sever S.D.'s parental rights so that C.W. may move toward adoption and permanency. *See P.L.*, 778 N.W.2d at 41.

**AFFIRMED.**